# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD ELSNER, M.D.,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br>SOUTHERN CALIFORNIA<br>PERMANENTE MEDICAL GROUP,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 06CV01400 JM(RBB)<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION; STAYING ACTION** |

Southern California Permanente Medical Group ("Medical Group") moves to compel arbitration of all claims alleged in the discrimination complaint filed by Plaintiff Chad Elsner, M.D. Plaintiff opposes the motion. Pursuant to Local Rule 7.1(d), this matter is appropriate for decision without oral argument. For the reasons set forth below, the motion to compel arbitration is granted and the action stayed pending arbitration.

## BACKGROUND

On July 11, 2006 Plaintiff, a licensed medical doctor in California, commenced the present action alleging that Medical Group violated the Uniform Services Employment and Re-employment Rights Act ("USERRA") and California Military and Veterans Code §3394. Pursuant to the terms of a Partnership Agreement, Plaintiff became a partner in Medical Group in July 2001. (Compl. ¶8; Motion Exh. A). From January 22, 2002 through September 30, 2004 Plaintiff was in active duty in the United

1  States military. (Compl. ¶9). He remains in military service as a Commander in the
2  Naval Reserves.

3        Plaintiff alleges that upon his return from active duty he was discriminated
4  against in violation of USERRA and Military and Veterans Code §3394 in the
5  following ways: he was provided with only two weeks notice of schedule changes
6  instead of the typical three months advance notice: he did not receive full merit pay
7  increases; he was subject to "unjustified verbal reprisals and discriminatory treatment;"
8  and he "received more severe treatment and standards as applied to [his] performance
9  than to those of other similarly situated who did not serve in the military." (Compl.
10 ¶12). Plaintiff seeks compensatory damages in the form of lost wages and liquidated
11 damages pursuant to USERRA.

12       The Partnership Agreement contains a detailed Dispute Resolution Procedure
13 ("DRP") that incorporates an arbitration process to resolve any disputes between the
14 partners and Medical Group. The DRP applies to "any dispute involving a Physician
15 and [Medical Group] that would otherwise be cognizable in a court of law, including,
16 without limitation, any dispute related to a Physician's relationship with [Medical
17 Group]." (Motion, Exh.B). The DRP sets forth a multi-level review process whereby
18 the claimant is given the opportunity to have the complaint reviewed at various levels.
19 If the claimant is not satisfied after completing Processes I through III, the claimant may
20 either bring the dispute to a Dispute and Request Committee (Process IV), or proceed
21 directing to binding arbitration before a single arbitrator in accordance with the rules
22 of the American Arbitration Association. (Motion, Exh. B). The DRP also identifies
23 numerous examples of disputes subject to arbitration. The provision specifically notes
24 that claims of "retaliation [or] discrimination" are subject to the procedures set forth in
25 the DRP. Id.

26       Based upon the arbitration provision contained in the DRP, Medical Group
27 moves to compel arbitration. Plaintiff opposes the motion.
28 / / /

## DISCUSSION

**Legal Standards**

The Federal Arbitration Act ("FAA") provides that

> a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.

9 U.S.C. §2. The FAA establishes federal policy favoring arbitration of disputes. Federal courts are required to "rigorously" enforce the parties agreement to arbitrate. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987). Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).

> [W]here a contract contains an arbitration clause, there is a presumption of arbitrability in a sense that `[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

A.T.&T. Tech. Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) (citations omitted).

The FAA creates "a body of federal substantive law of arbitrability," enforceable in both state and federal courts and preempting any state laws or policies to the contrary. Moses H. Cone, 460 U.S. at 24. "The availability and validity of defenses against arbitration are therefore to be governed by application of federal standards." Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 285 (9th Cir. 1988). This body of federal law also requires that federal courts apply state law, "whether of legislative or judicial origin [] if that law arose to govern issues concerning the validity, revocability and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 493, fn. 9 (1987). Thus, state law applies to interpret arbitration agreements as long as those state laws are generally applicable to all contracts, and not just agreements to

arbitrate. With these general principles in mind, the court turns to the issues raised by the parties.

**Applicability of the Federal Arbitration Act**

The DRP demonstrates that the parties agreed to arbitrate the discrimination claims at issue. The arbitration provision is enforceable unless Plaintiff can demonstrate that Congress intended to preclude arbitration. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985). Plaintiff bears the burden of demonstrating that Congress intended to preclude a waiver of a judicial forum for USERRA claims. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); Garret v. Circuit City Stores, Inc., 449 F.3d 672, 674 (5th Cir. 2006).

Plaintiff raises two main arguments in opposition to the motion to compel arbitration. First, he contends that the arbitration provision does not apply to the present case because the contract at issue does not involve commerce as required by 9 U.S.C. § 2. Second, he contends that the claims are not subject to arbitration because of the exclusive federal jurisdictional provision of USERRA. Neither argument is persuasive.

The threshold issue under §2 of the FAA court is whether the arbitration provision contained in the parties agreement, "involving commerce," is enforceable. The parties do not seriously dispute that a contract for the provision of medical services has a sufficient connection with commerce to satisfy the interstate commerce requirement of the FAA.[1] See Allied Bruce v. Terminix v. Corp., 513 U.S. 265, 272 (1995). Here, there can be no genuine dispute that the provision of medical services in fact affects interstate commerce (i.e. medications, medical supplies, provisions, equipment, reporting requirements, insurance, processing of claims, licenses, etc. all impact and affect interstate commerce). As emphasized by the Supreme Court, the phrase "involving commerce" is to be construed broadly, coextensive with the phrase

---

[1] Plaintiff contends that "Defendant has not proved that this dispute involves interstate or foreign commerce." (Oppo. at p.7:7-8). The court notes that the burden is on Plaintiff, not Defendant. See Gilmer, 500 U.S. at 26-27.

1  "affecting commerce" under the Commerce Clause. Id. at 273. Consequently, the
2  provision of medical services satisfies the "involving commerce" requirement of the
3  FAA.

4  Plaintiff also contends that USERRA preempts the FAA because USERRA
5  "supersedes any state law, contract, agreement, policy, plan, practice, or other matter
6  that reduces, limits, or eliminates in any manner any right or benefit provided by this
7  chapter." 38 U.S.C. §4302(b). Plaintiff acknowledges that there is no Ninth Circuit or
8  Supreme Court authority supporting his position but nonetheless concludes that
9  "USERRA supercedes the arbitration agreement signed by the parties, because
10 USERRA intends to protect those in the uniformed service." (Oppo. at p.9:15-17).
11 This argument is not persuasive.

12 In Garrett, the Fifth Circuit directly addressed the issue of whether §4302(b)
13 preempted an arbitration provision. The Fifth Circuit noted that the terms "right or
14 benefit" in §4302(b) only "relate to compensation and working conditions, not to
15 affording a particular forum for dispute resolution." 449 F.3d at 681. After reviewing
16 USERRA's legislative history and pertinent authorities, the Fifth Circuit concluded that
17 "arbitration is not inconsistent with effective vindication of [Plaintiff's] USERRA right
18 to be free from unlawful discrimination." Id. at 681. The Fifth Circuit compelled
19 arbitration of the USERRA claims.

20 Further, Plaintiff cites no authority in support of the proposition that the mere
21 existence of an exclusive federal jurisdiction provision invalidates an otherwise valid
22 agreement to arbitrate. Indeed, courts routinely compel arbitration of actions involving
23 exclusive federal jurisdiction provisions. For example, claims under the Securities
24 Exchange Act of 1934, 15 U.S.C. §78aa, which provides for exclusive federal
25 jurisdiction, are subject to arbitration, see Shearson/American Express, Inc. v.
26 McMahon, 482 U.S. 220, 227-28 (1987), as are antitrust claims which are similarly
27 within the federal court's exclusive jurisdiction. See Mitsubishi Motors Corp. v. Soler
28 Chrysler-Plymouth, Inc., 473 U.S. 614 (1985).

1    Finally, the court concludes that FAA's strong policy favoring arbitration, see Gilmer, 500 U.S. 20 (holding that federal policy favors arbitration), coupled with the Supreme Court's instruction that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Cone Memorial, 460 U.S. at 24, further tips the scales in favor of arbitration. In Gilmer, the plaintiff brought an age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") and argued that his claims were not subject to compulsory arbitration pursuant to an arbitration agreement contained in a securities registration application. Gilmer argued, like Plaintiff does here, that arbitration panels are biased towards employers, discovery is limited in arbitration, arbitrators do not issue written decisions, and arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for broad equitable relief and class actions. In resoundingly rejecting each of these arguments, the Supreme Court observed that "[s]uch generalized attacks on arbitration 'res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants,' and as such, they are 'far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." Id. at 30. The denial of the motion to compel arbitration at issue would severely undermine the pro-arbitration policies of the FAA. As repeatedly emphasized by the Supreme Court, "the basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." Terminix, 513 U.S. at 270. Accordingly, the court grants the motion to compel arbitration.[2]

In sum, the court grants the motion to compel arbitration and stays this action pending arbitration of Plaintiff's claims. The parties are instructed to file a joint status report by January 15, 2007, informing the court of the status of the arbitration

/ / /

proceedings, if any. The parties are advised that the failure to timely file the requested

---

[2] The parties also dispute whether Plaintiff is or is not an employee for purposes of USERRA. This issue, as well as any other merits-based argument, must be brought before the arbitrator, and not this court.

status report may result in the dismissal of the complaint without prejudice.

**IT IS SO ORDERED.**

DATED:  September 20, 2006

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:	All parties